**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**JOSHUA RICH,**

    Plaintiff,

v.                          **CIVIL ACTION NO. 3:13-CV-137**
                                 **(JUDGE GROH)**

**UNITED STATES OF AMERICA,**

    Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

### I. Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. Pursuant to Rule 2 of the Local Rules of Prisoner Litigation Procedure, this action was referred to Judge Seibert for submission of a proposed report and recommendation. Judge Seibert filed his Report and Recommendation [Doc.21] on May 13, 2014. In that filing, he recommended that this Court grant the Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and dismiss Plaintiff's Complaint with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a de novo review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a de novo or any other standard, the

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of de novo review and Plaintiff's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

In this case, objections to Magistrate Judge Seibert's report and recommendation were due within fourteen (14) days after being served with a copy of the report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Plaintiff timely filed his objections on May 27, 2014. On June 4, 2014, Defendant filed its response. Accordingly, this Court will undertake a de novo review of those portions of Judge Seibert's findings to which objection is made. This Court will review the remainder of the report and recommendation for clear error.

## II. Background

### A. Factual Background

Plaintiff's Complaint seeks damages against the United States pursuant to the Federal Tort Claims Act for negligent failure to protect Plaintiff Rich from attack by prison inmates. Plaintiff's Complaint arises out of an incident that occurred while he was an inmate at USP Hazleton ("Hazleton") in Bruceton Mills, West Virginia. On August 5, 2011, Plaintiff was placed in a Special Housing Unit ("SHU") recreation cage with Inmate Alexander and four other inmates, all or some of whom were allegedly known Aryan Brotherhood ("AB") gang members or members of AB-affiliated gangs. During this incident,

Plaintiff was severely beaten and repeatedly stabbed. He sustained life-threatening injuries to his head, chest, back, and stomach. As a result of his injuries, he was taken to Ruby Memorial Hospital in Morgantown, West Virginia, and later transferred to Monongalia General Hospital, also in Morgantown. He underwent a bronchoscopy for respiratory failure, an exploratory laparotomy to repair a liver laceration, a right nephrectomy (removal of his right kidney), a sternotomy (where the sternum is "cracked open"), and open heart surgery to repair the right atrium of his heart. Plaintiff was hospitalized at least from August 5-25, 2011.

Plaintiff alleges negligence for failure of Bureau of Prison ("BOP") officials and employees to protect him from attack by other inmates. Plaintiff argues that prior to his attack at USP Hazleton, BOP officials knew that Plaintiff should be protected from AB members. Plaintiff alleges that prior to arriving at Hazelton, he was threatened by AB gang members at three other BOP facilities. First, in November 2008 at USP Victorville, he was threatened by AB members for failing to comply with their customs. At USP Victorville, Plaintiff formally requested protection from the AB from the BOP's Special Investigative Services ("SIS"). Plaintiff states that on November 30, 2008, an order of protection or formal separation order was created directing that he be protected from David Snow and known members of the AB or AB-affiliated gangs. In February 2009, Plaintiff was transferred to USP Pollock. Plaintiff alleges that during the first month at USP Pollack, he was assaulted by two members of the AB, and he sustained a chin laceration. Then, in October 2009, Plaintiff was transferred to USP McCreary. Around February 2010, inmates

3

at USP McCreary were informed that Plaintiff had "checked in"[1] at USP Victorville. Plaintiff then alerted the SIS that a knife was on his unit because he was afraid it would be used on him. Ultimately, the SIS charged Plaintiff with its possession and placed him in the SHU for disciplinary segregation. Around February 2011, Plaintiff arrived at Hazleton. Plaintiff alleges he felt so unsafe at Hazleton that he and another inmate staged an assault in order to be placed in the SHU. Upon placement in the SHU, Plaintiff learned there was a known AB member, Inmate Alexander, also housed there. Subsequently, Plaintiff was severely injured as a result of the above-described attack. As relief, he requests compensatory damages, economic damages, costs of the suit, attorney's fees, and other relief as the Court deems necessary.

**B. Procedural History**

On October 2, 2013, Plaintiff, by counsel, filed his Complaint. On December 16, 2013, the United States filed its motion to dismiss. On December 30, 2013, Plaintiff filed his response. On January 6, 2014, the United States filed its reply.

Upon considering the above, Magistrate Judge Seibert issued a report and recommendation wherein he recommended that this Court grant the United States' motion to dismiss for lack of subject matter jurisdiction and dismiss Plaintiff's Complaint with prejudice. Thereafter, Plaintiff filed objections to the report and recommendation, and the United States filed its reply. Accordingly, this issue is ripe for the Court's review.

---

[1]According to Plaintiff, "[w]hen an inmate no longer feels safe after having submitted to pressure, intimidation, debts, etc., and initiates contact with a Protective Custody (PC) unit, he is said to have "checked-in." Compl., ¶ 35, n.1.

4

### III. Legal Standard

A party may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The party asserting federal jurisdiction has the burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss. See LeRose v. United States, 285 F. App'x 93, 96 (4th Cir. 2008). When addressing a Rule 12(b)(1) motion to dismiss, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004).

### IV. Discussion

Plaintiff filed essentially two objections to Magistrate Judge Seibert's Report and Recommendation. First, Plaintiff argues that Magistrate Judge Seibert erred by applying the discretionary exception to the Federal Tort Claims Act ("FTCA"). Second, Plaintiff contends that Magistrate Judge Seibert erred by dismissing the Complaint without first permitting Plaintiff to engage in limited discovery on the issue of subject matter jurisdiction. The Court addresses each objection below.

#### 1. Whether a Nondiscretionary Mandate Existed for BOP Employees

Plaintiff argues that a nondiscretionary mandate existed in this instance with respect to his claim that BOP employees failed to properly pat-search and screen inmates placed in the SHU with a handheld metal detector prior to placing the inmates in the recreation cage, and he argues that Magistrate Judge Seibert placed improper weight on inapposite case law in applying the discretionary function exception to the

5

officers' challenged conduct involving the search of the inmates placed in the SHU.

The FTCA creates a limited waiver of the United States' sovereign immunity by permitting actions for damages for injuries caused by the tortious conduct of a federal employee acting within the scope of their employment, when a private person would be liable for such conduct under state law. See 28 U.S.C. § 1346(b)(1). However, the United States' limited waiver of sovereign immunity has several exceptions, and "[t]he most important . . . is the discretionary function exception." McMellon v. United States, 387 F.3d 329, 335 (4th Cir. 2004). The discretionary function exception provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The United States Supreme Court has stated that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense(Varig Airlines), 467 U.S. 797, 808 (1984). The United States Supreme Court has described the scope of the discretionary exception as including "the initiation of programs and activities[] [and] . . . determinations made by executives or administrators in establishing plans, specifications or schedules of operations." Id. (quoting Dalehite v. United States, 346 U.S. 15, 35-36 (1953) (internal quotations omitted). Additionally, the United States Supreme Court stated that "[w]here there is

6

room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." Id.

Plaintiff has the burden to prove "an unequivocal waiver of sovereign immunity and the existence of subject matter jurisdiction." LeRose, 285 F. App'x at 96. To determine whether the discretionary function exception applies in this case, the Court conducts a two-step inquiry. First, the Court must determine whether the challenged conduct "involves an element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536 (1988). Under this first prong, the Court determines whether the challenged conduct is the subject of a mandatory federal statute, regulation, or policy prescribing a specific course of action. Hawes v. United States, 409 F.3d 213, 217 (4th Cir. 2005); see also Berkovitz, 486 U.S. at 536 (stating the discretionary exception does not apply when an employee is merely following "a federal statute, regulation, or policy [that] specifically prescribes a course of action"). Second, if the conduct does involve discretionary judgment, then the Court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536-37. These types of judgments are those "decisions grounded in social, economic, and political policy." Id.

In this case, Plaintiff alleges in his Complaint that BOP officers were negligent because "they failed to properly screen, 'wand,' or search inmates entering the SHU

and/or SHU recreation cages to ensure that there were no weapons." Compl., ¶ 58.[2] Therefore, the Court will conduct a two-step inquiry to determine whether the discretionary function exception applies. First, the challenged conduct–that BOP officials failed to properly search the inmates in the SHU prior to entering the recreation cage–involves an element of judgment or choice. Pursuant to 18 U.S.C. §4042, the BOP must "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). This is a very broad federal statute that does not prescribe a specific course of action. See Goforth v. United States, Civil Action No. 1:12-4621, 2013 WL 5658347, at *3 (S.D.W. Va. Oct. 15, 2013) (stating that "[c]ases from this circuit and other circuits have unanimously held that BOP officials retain wide discretion as to the means by which this general duty [of providing for the protection, care, subsistence, and safekeeping of all federal prisoners] is fulfilled"); Calderon v. Foster, Civil Action No. 5:05-cv-00696, 2007 WL 1010383, *6 (S.D.W. Va. Mar. 30, 2007) (stating that 18 U.S.C. § 4042(a) "permits officers to act with a substantial amount of discretion"). Indeed, it provides no specific instruction or mandate to the officers regarding how to conduct searches of inmates.

In addition to the broad federal statute, the BOP also has procedures for searching SHU inmates contained in "post orders." The post orders in place at the time of the attack mandated that SHU inmates were to be handcuffed and pat-searched before going out to recreation and that inmates were to be screened with a handheld

---

[2]Plaintiff does not allege that BOP officers failed to screen the inmates. Rather, Plaintiff alleges that they were not *properly* screened.

metal detector before entering the recreation yard and upon return. Def.'s Mem., p. 4. The SHU recreation post order also required the correctional officers to handcuff inmates from behind before the inmates exited their cells. [Doc. 15], p. 3. Once handcuffed, the correctional officers were required to pat-search and screen the inmates with a handheld metal detector wand before they entered the recreation yard and when they returned to the SHU. Id. The correctional officers were also required to remain in the recreation area when inmates were there and never to leave them unsupervised in the recreation area. Id. The SHU recreation post order states that

> Post orders are issued as guidelines for the officers assigned to this post and are not intended to describe in detail all of the duties assigned to this post. Officers assigned to this post are expected to use their initiative and good judgment in all situations covered in these post orders.

[Doc. 15-3], p. 4. In reviewing the applicable post orders, they do not mandate a specific course of conduct for the officers to abide by in performing searches of the inmates. Rather, the post orders provide an element of discretion and judgment, and they specifically state that officers are "expected to use their initiative and good judgment." Accordingly, the challenged conduct of the officers involves an element of discretion and judgment.

Because the Court has found that the challenged conduct involves an element of discretion or judgment, the Court must now determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536-37. The United States Supreme Court has stated that the purpose of the discretionary exception is to "'prevent judicial 'second-guessing' of legislative and

9

administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,' when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" United States v. Gaubert, 499 U.S. 315, 323 (1991).

In this case, Plaintiff's Complaint challenged the officers' judgment as it related to housing Plaintiff in the SHU, permitting him to recreate with other inmates, and performing searches of SHU inmates to permit them to recreate.  However, Plaintiff has only objected to Magistrate Judge Seibert's finding that the discretionary exception applied to the BOP employees' alleged improper search of SHU inmates.  The BOP's discretionary policies satisfy the second prong of the discretionary function test.  The BOP's policies are consistent with public policy concerns because the BOP and prison administrators must be given deference in implementing and executing their policies in order to preserve internal discipline and maintain institutional security.  See Bell v. Wolfish, 441 U.S. 520, 547-48 (1979).  Finally, 18 U.S.C. § 4042(a) "is an established governmental policy . . . [that] allows a Government agent to exercise discretion" in providing for the safekeeping, protection, and care of inmates.  Therefore, it is "presumed that the [BOP's] acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.  Accordingly, Plaintiff has failed to meet his burden to establish that this Court has subject matter jurisdiction, and the Court finds that the discretionary function exception applies to the BOP officers' alleged conduct.

**2. Whether Plaintiff Should be Permitted to Engage in Discovery**

Plaintiff also contends that he is entitled to discovery on the limited jurisdictional

issue before this Court in order to determine if an applicable mandatory directive exists. Defendant argues that Plaintiff has not demonstrated that discovery is warranted in this case.

In order for this Court to find discovery is warranted, the Plaintiff must address the following two issues: (1) what additional information might be uncovered through discovery, beyond the statements in declarations of the correctional officers and the publically available policies of the BOP, and (2) how that information might render the government liable under his failure to protect theory of negligence. See Durden v. United States, 736 F.3d 296, 307 (4th Cir. 2013) (holding that the district court did not abuse its discretion by ruling on the government's motion to dismiss for lack of subject matter jurisdiction without granting discovery to the plaintiff). Even in Plaintiff's objection, he failed to demonstrate that discovery is warranted. Indeed, Plaintiff failed to explain what additional information might be uncovered through discovery. Plaintiff had access to the BOP's publically available policies as well as the declarations of the correctional officers. Additionally, this Court does not find that an evidentiary hearing is warranted because the court considered evidence presented by their parties in their briefing, including affidavits, and Plaintiff has "not raise[d] a dispute of fact with any material relevance to the jurisdictional question" before this Court. See Zander v. United States, 494 F. App'x 386, 389 (4th Cir. 2012) (affirming district court's decision denying plaintiff's request for an evidentiary hearing on the limited jurisdictional issue before the court); see also Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1983) (stating that a district court, in disposing of a Rule 12(b)(1) motion, may consider evidence "by

affidavit, depositions or live testimony"). Accordingly, Plaintiff's request for an evidentiary hearing is denied. Finally, the Court has reviewed the remainder of the report and recommendation that Plaintiff has not objected to for clear error, and it has not found that Magistrate Judge Seibert committed clear error. For all these reasons, the Court adopts Magistrate Judge Seibert's report and recommendation.

### V. Conclusion

Upon careful review of the record, it is the opinion of this Court that Magistrate Judge Seibert's Report and Recommendation should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated therein. Further, the Plaintiff's Objections are **OVERRULED**. It is further ordered that the Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DENIED and DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter in favor of Defendant.

**DATED**: June 19, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE